# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXIS R.,<br>　　　　*Plaintiff,*<br><br>　　v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner,*<br>*Social Security Administration,*<br>　　　　*Defendant.* | No. 3:21-cv-00162 (JAM) |

## ORDER GRANTING MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff claims that he is disabled and unable to work owing to several mental and physical impairments.[1] He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, who denied his claim for Title II social security disability insurance.[2] The Acting Commissioner has moved to affirm the decision.[3] For the reasons discussed below, I will grant the Acting Commissioner's motion.

### BACKGROUND

The following facts are taken from transcripts provided by the Acting Commissioner.[4] Plaintiff's most recent long-term employment was as a forklift operator, where he worked for several years before the business closed.[5] He filed a Title II application for disability and disability insurance benefits in February 2019, alleging disability beginning January 31, 2018.[6]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference Plaintiff solely by first name and last initial. *See* Standing Order – Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2] Doc. #1.

[3] Doc. #34. Pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court is respectfully requested to substitute the Acting Commissioner of Social Security Kilolo Kijakazi as the defendant in place of the Commissioner of Social Security who was initially named as the defendant.

[4] Doc. #21. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. *X*).

[5] Doc. #21 at 229, 1236 (Tr. 225, 1232).

[6] *Id.* at 19 (Tr. 15).

The Social Security Administration (SSA) initially denied Plaintiff's claims in June 2019, and again upon reconsideration in November 2019. He then filed a written request for a hearing.[7]

Plaintiff appeared with counsel and testified before an ALJ in a June 2020 telephone hearing.[8] Vocational expert Michael C. Dorsey also testified.[9] In July 2020, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[10] The SSA Appeals Council denied Plaintiff's request for review in December 2020.[11] Plaintiff then filed this federal court action in February 2021.[12]

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "Work exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)–(b), 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

---

[7] *Ibid.*
[8] *Ibid.*
[9] *Ibid.*
[10] *Id.* at 37 (Tr. 33).
[11] *Id.* at 5–9 (Tr. 1–5).
[12] Doc. #1.

The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

After proceeding through all five steps, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 31, 2018, the alleged onset date.[13]

At Step Two, the ALJ concluded that Plaintiff suffered from the following severe impairments: position-induced vestibulopathy, degenerative disc disease of the lumbar spine, tinnitus, asthma, obesity, posttraumatic stress disorder, and major depressive disorder.[14] The ALJ

---

[13] Doc. #21 at 21 (Tr. 17).
[14] *Id.* at 21–22 (Tr. 17–18).

further determined that Plaintiff had additional medically determinable non-severe impairments: headaches or migraines, obstructive sleep apnea, and type 2 diabetes mellitus.[15]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[16] The ALJ then found that Plaintiff had a residual functional capacity (RFC) to perform light work defined in 20 C.F.R. § 404.1567(b) except that he can only occasionally climb ramps and stairs, stoop, balance, kneel, and crouch; can never climb ladders, ropes, or scaffolds, crawl, work at unprotected heights, or work with dangerous moving machinery; and his work environment could have no more than a moderate noise level and provide no more than occasional exposure to fumes, odors, or other pulmonary irritants. The ALJ further limited Plaintiff's RFC to simple, routine tasks in a work environment that is not fast-paced and does not have strict production quotas. Finally, the ALJ determined that Plaintiff could have no more than incidental interaction with the general public and no more than occasional interaction with coworkers and supervisors, in a job where changes in work setting or processes are few and any changes are explained in advance, and where the individual job responsibilities are performed without close teamwork, tandem work, or over-the-shoulder supervision.[17]

At Step Four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.[18] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (42), education (high school), work background, and RFC could perform the requirements of a garment sorter, router, and marker, positions which combined

---

[15] *Id.* at 22 (Tr. 18).
[16] *Id.* at 23 (Tr. 19).
[17] *Id.* at 25 (Tr. 21).
[18] *Id.* at 35 (Tr. 31).

represented approximately 186,000 jobs in the national economy.[19] The ALJ ultimately held that Plaintiff was not disabled within the meaning of the Social Security Act since January 31, 2018.[20]

DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).[21]

### *Failure to develop the record*

Plaintiff argues that the ALJ did not adequately develop the record. "The ALJ, unlike a judge in a trial, must herself affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). But the duty to develop the record is not limitless. An ALJ has no duty to develop a

---

[19] *Id.* at 36 (Tr. 32).
[20] *Id.* at 36–37 (Tr. 32–33).
[21] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

history outside the relevant period unless there are "obvious gaps or inconsistencies" in the record. *See O'Connell v. Colvin*, 558 Fed. App'x 63, 64 (2d Cir. 2014).

There was sufficient evidence in the record from which the ALJ could assess Plaintiff's RFC. The record contains over 1,000 pages of medical records, including numerous treatment notes from Drs. Cumberbatch, Nagalla, Tarabar, and other treating sources, reports from several medical consultants—Drs. Wurzel, Rittner, and others—concerning Plaintiff's condition, hospital records, and Plaintiff's own testimony.[22] Apart from the claims addressed in the below paragraph, Plaintiff has pointed to no evidence outside the record that the ALJ had failed to consider. Nor has Plaintiff shown any obvious gaps in the record that the ALJ should have addressed.

Plaintiff argues that the record was deficient because he was never physically examined by the SSA. But Plaintiff has undergone several physical examinations since 2018, including by state agency consultants evaluating his alleged disabilities.[23] Because his medical records are comprehensive and because Plaintiff does not point to any gaps in the record that an additional physical test would fill, I conclude that the ALJ did not err in not ordering a medical exam.

Plaintiff also claims that he has "New Evidence pertaining to [his] Knees Disabilities," but he does not elaborate on the nature of the evidence or produce the evidence.[24] A court may only order the Secretary to consider additional evidence on remand "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff has not claimed that the new evidence is material or that he had good cause for failing to previously produce the

---

[22] *See* Doc. #21.
[23] *Id.* at 70–83, 89–108 (Tr. 66–79, 85–104).
[24] Doc. #25.

6

evidence. I therefore determine that the record was fully developed without this evidence. All in all, I conclude that the ALJ did not breach his duty to develop the record.

### *Substantial evidence for the RFC*

Plaintiff argues that substantial evidence does not support the ALJ's determination of Plaintiff's RFC. I do not agree for largely the same reasons advanced by the Acting Commissioner.[25] The ALJ thoroughly evaluated the entire medical record, including the findings of treating providers, examiners, and medical consultants, as well as Plaintiff's testimony, behavior, and function reports.[26] He also heard from a vocational expert who testified at the hearing.[27] The ALJ considered this evidence in light of the regulatory guidelines in determining Plaintiff's RFC and reasonably concluded that Plaintiff's limitations would not preclude him from performing a job.[28]

The only specific errors that Plaintiff alleges are that the ALJ did not adequately address Plaintiff's alleged difficulties sitting and walking.[29] But the ALJ's opinion belies this claim. For example, after discussing Plaintiff's alleged inability to walk, the ALJ pointed out that Plaintiff's mental health provider "has routinely noted [Plaintiff] to ambulate on his own" and that a 2019 neurologic examiner found Plaintiff's gait to be normal.[30] With respect to sitting, the ALJ acknowledged Plaintiff's alleged difficulty sitting while also noting that Plaintiff had reported decreased pain when sitting.[31] This analysis occurred in the context of the ALJ's conclusion that the evidence did not show that Plaintiff's impairments were as severe as he claimed.[32] Relatedly,

---

[25] *See* Docs. #34, #37.
[26] Doc. #21 at 23–35 (Tr. 19–31).
[27] *Id.* at 64–68 (Tr. 60–64).
[28] *Id.* at 36–37 (Tr. 32–33).
[29] Doc. #42 at 3, 5.
[30] Doc. #21 at 26–28 (Tr. 22–24).
[31] *Id.* at 26–27 (Tr. 22–23).
[32] *Id.* at 27–29 (Tr. 23–25).

the ALJ considered Plaintiff's inconsistent course of treatment, in which he repeatedly failed to "comply and follow-up with treatment recommendations," in concluding that his behavior was inconsistent with the alleged severity of his impairments.[33]

Finally, one doctor determined that Plaintiff retained the capacity for medium exertional work, finding that he could sit and walk for long periods.[34] The ALJ considered and rejected her findings, reasoning that, in light of "the record as a whole," Plaintiff was limited to "less than the full range of light exertional work."[35] Given the ALJ's in-depth assessment of the evidence relating to Plaintiff's alleged difficulties sitting and walking, it cannot be said that this conclusion was unsupported by substantial evidence.

### Telephone hearing

Plaintiff claims that his hearing was improperly conducted over the phone, that the ALJ "stated that he was in a resort setting," and that the ALJ said "not to pay attention to the surrounding noise."[36] The SSA has held virtual hearings since March 2019 due to the COVID-19 pandemic. *See* Soc. Sec. Admin., *SSA Hearing Options Available During COVID-19*, https://www.ssa.gov/appeals/hearing_options.html [https://perma.cc/R4Q2-C6QW]. "Testimony by telephone … require[s] both notice and consent," and Plaintiff and his attorneys had consented to a telephone hearing.[37] *Morlando v. Astrue*, 2011 WL 4396785, at *6 (D. Conn. 2011); *see also* 20 C.F.R. § 404.936(c)(2) (authorizing ALJ hearings by telephone). Moreover, the transcript does not reflect that the ALJ conducted the hearing from a resort setting. Instead, the ALJ stated that he was "operating out of [his] own abode."[38] Finally, the transcript does not

---

[33] *Id.* at 28 (Tr. 24).
[34] *Id.* at 103–04 (Tr. 99–100).
[35] *Id.* at 33 (Tr. 29).
[36] Doc. #25.
[37] Doc. #21 at 19, 367 (Tr. 15, 363).
[38] *Id.* at 45 (Tr. 41).

reflect any statement from the ALJ—or from any party—regarding background noise, and

Plaintiff points to nothing indicating that noise significantly interfered with the hearing. I

conclude that the hearing process was not improper.

### *Veterans Affairs disability rating*

Giving a liberal construction to Plaintiff' papers, I understand him to argue that he was

wrongly denied disability despite having previously been awarded disability by the U.S.

Department of Veterans Affairs (VA). In 2019, the VA determined that Plaintiff was 100%

disabled, and the VA's disability decision was a part of the record before the ALJ.[39] The ALJ

addressed the VA's decision as follows:

> The record also includes disability ratings assessed by the Department of Veterans
> Affairs. (See, e.g., Ex. 17E.) I note that an opinion on whether an individual is
> disabled goes to an issue reserved to the Commissioner and is therefore inherently
> neither valuable nor persuasive (20 CFR 404.1520b). Moreover, the standards used
> by the Department of Veterans Affairs in determining disability are different that
> those used by the Social Security Administration; therefore, I am not bound by
> disability ratings and will not provide analysis of them (20 CFR 404.1504).
> However, we will consider all of the supporting evidence underlying another
> governmental agency's decision that we receive as evidence (20 CFR 404.1504). I
> have considered all medical evidence of record in arriving at the findings herein.[40]

The ALJ's treatment of the VA's disability decision was consistent with Social Security

regulations that came into effect as of March 27, 2017.[41] One of these regulations—20 C.F.R.

§ 404.1520b—is titled "How we consider evidence." It includes a listing of types of evidence

that the SSA deems "inherently neither valuable nor persuasive," and among such types of

evidence are "[d]ecisions by other governmental agencies and nongovernmental entities." 20

---

[39] *Id.* at 325–33 (Tr. 321–29).
[40] *Id.* at 35 (Tr. 31).
[41] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844).

C.F.R. § 404.1520b(c)(1). The prior version of this regulation did not identify prior decisions of other governmental agencies such as the VA to be inherently not valuable nor persuasive.[42]

A second regulation—20 C.F.R. § 404.1504—is titled "Decisions by other governmental agencies and nongovernmental entities." It states that other government agencies such as the VA may make disability decisions "for their own programs using their own rules" but that such decisions are "not binding on us." *Ibid.* It goes on to state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency" but that "we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." *Ibid.* Although the prior version of this regulation made clear that the decisions of other agencies were not binding on the SSA, "it said nothing as to an ALJ's duty in reconciling his decision with the decision of another agency or nongovernmental entity." *McClellon v. Kijakazi*, 2021 WL 6133847, at *4 (D.S.C. 2021).

Are these 2017 regulations consistent with the law of the Second Circuit relating to how the SSA must treat a determination by the VA that a claimant is disabled? No, they are not. It has long been the rule in the Second Circuit that the VA's determination that a claimant is disabled is entitled to "some weight and should be considered." *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975).[43] When the regulations instruct that the VA's disability determination is "inherently neither valuable nor persuasive" and that the ALJ's decision need not include "any

---

[42] How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10655-56 (Feb. 23, 2012) (codified at 20 C.F.R. § 404.1520b) (effective Mar. 26, 2012 – Mar. 26, 2017), https://www.govinfo.gov/content/pkg/FR-2012-02-23/html/2012-4177.htm [https://perma.cc/ANT6-9ZDJ].

[43] This rule has been repeatedly recited in published and unpublished decisions of the Second Circuit. *See Wright v. Comm'r of Soc. Sec.,* 2021 WL 4452158, at *2 (2d Cir. 2021); *Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016); *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Claymore v. Astrue*, 519 F. App'x 36, 38 (2d Cir. 2013); *Lohnas v. Astrue*, 510 F. App'x 13, 14 (2d Cir. 2013); *Hankerson v. Harris*, 636 F.2d 893, 896–97 (2d Cir. 1980).

analysis" of the VA's disability determination, this is not consistent with a requirement that such determinations be given "some weight" and they be "considered."

What rule should I follow: the new regulations of 2017 or the long-governing standard set forth by the Second Circuit? The Second Circuit has yet to directly answer this question. But it has instructed how a conflict between a new regulation and a prior judicial rule should be resolved: "New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority or are arbitrary and capricious.'" *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (quoting *Heckler v. Campbell*, 461 U.S. 458, 466, 466–68 (1983)).

Thus, the Second Circuit in *Schisler* upheld the validity of new Social Security regulations governing the evaluation of the opinions of treating physicians. It ruled that the regulations did not exceed the authority of the Secretary of the Department of Health and Human Services to issue regulations and were not arbitrary or capricious, notwithstanding the fact that they were not consistent with prior Second Circuit authority governing what weight must be given to the opinions of a treating physician. *Id.* at 568–69.

Applying the standard set forth in *Schisler*, I have no grounds here to conclude that the new regulations exceed the Secretary's authority. Federal law authorizes the Secretary to issue regulations governing the Social Security disability program and, in particular, to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a).

Nor do I have grounds to conclude that it was altogether arbitrary or capricious for the new regulations to discount the disability determinations made by other governmental agencies. One can readily understand—especially in light of the large number of disability applicants—

11

why the Secretary would decide that the SSA should focus on the primary medical evidence

relating to disability rather than engaging in second-order consideration of what other

governmental agencies have concluded at a different time and using different legal standards and

manners of proof. *See* Notice of Proposed Rulemaking – Revisions to Rules Regarding the

Evaluation of Medical Evidence, 81 Fed. Reg. 62560 (Sept. 9, 2016), 2016 WL 4702272, at

*62564–62566 (explaining grounds to decline to require consideration of other governmental

agency disability determinations including determinations of the VA); Final Rules – Revisions to

Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017), 2017

WL 168819, at *5848–49 (same).

  The Supreme Court has ruled that "[a] court's prior judicial construction of a statute

trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court

decision holds that its construction follows from the unambiguous terms of the statute and thus

leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

Servs.*, 545 U.S. 967, 982 (2005). Applying this standard, there is no indication that the Second

Circuit's rule that a VA determination must be given some weight and consideration rests on any

unambiguous terms of the Social Security Act and thus leaves no room for agency discretion. To

the contrary, as noted above, the Social Security Act confers broad regulatory discretion on the

Secretary to decide how to weigh and evaluate evidence, including to decide what constitutes

"evidence" and what does not. The Social Security Act does not speak unambiguously to the

issue of whether an ALJ must give some weight to or otherwise consider the disability

determinations made by any other government agency.

  Recognizing the broad discretion conferred by the Social Security Act, two federal courts

of appeals have recently applied the Supreme Court's *Brand X* decision and upheld Social

12

Security regulations with respect to the weight and evaluation of evidence, notwithstanding the fact that these regulations conflicted with prior circuit precedent. *See Harner v. Soc. Sec. Admin., Comm'r,* 38 F.4th 892 (11th Cir. 2022) (regulatory change in 20 C.F.R. § 404.1520c abolishing the "treating physician" rule that had generally required controlling weight to be given to the opinion of a treating physician); *Lambert v. Saul*, 980 F.3d 1266, 1270–76 (9th Cir. 2020) (regulatory change departing from prior judicial rule that accorded a presumption of disability if a claimant was previously disabled).

For the same reasons, multiple other district courts have ruled that the 2017 regulations governing the treatment of VA disability determinations are valid notwithstanding any prior contrary circuit precedent. *E.g.*, *Hannah v. Comm'r of Soc. Sec.*, 2022 WL 4236630, at *7–8 (N.D. Ala. 2022); *S.L. v. Comm'r*, 2022 WL 897104, at *5–6 (D. Colo. 2022); *Geist v. Kijakazi*, 2022 WL 615028, at *4–5 (W.D. Okla. 2022).

Lastly, I note the contrary rulings of two district courts from North Carolina. *See Moore v. Kijakazi*, 2022 WL 3723109, at *3–4 (W.D.N.C. 2022); *Rose v. Saul*, 2020 WL 4740479, at *2–5 (E.D.N.C. 2020). These decisions concluded that the 2017 regulations do not control over prior Fourth Circuit precedent which requires that substantial weight be afforded to a VA disability determination. They both remanded for failure of the ALJ to make case-specific findings concerning the VA decision or to provide persuasive, specific, and valid reasons for discounting the VA decision.

But these two decisions do not cite or apply the Supreme Court's decision in *Brand X* which sets forth the governing legal standard to decide whether an intervening regulation takes precedence over a prior circuit court ruling. Instead, both decisions claim that the failure of an ALJ to address the VA's contrary disability determination makes it impossible to conduct

judicial review. *See Rose*, 2020 WL 4740479, at *3 ("An ALJ who fails to address a VA disability rating leaves a gap in his or her decision, rendering judicial review impossible."); *Moore*, 2022 WL 3723109, at *3 ("[A]n ALJ's decision that ignores such a determination [by the VA] fails to provide the requisite findings to allow judicial review."). This is not convincing. A court's limited judicial review role in the Social Security disability context is to decide if there was substantial medical evidence to support the ALJ's disability determination and to ensure that the ALJ correctly applied the governing legal standards. The fact that the ALJ does not give weight to or discuss another government agency's disability determination does not make it impossible for a court to decide if there was substantial medical evidence and if the law was followed.

In short, the ALJ abided by the controlling regulations governing his consideration of the VA's disability determination. Although those regulations depart from prior Second Circuit precedent governing what weight and consideration must be given to a disability determination of the VA, the regulations are valid and control in this case.

## CONCLUSION

For the reasons set forth above, the Acting Commissioner's motion to affirm (Doc. #34) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 19th day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

14